Michael Adams (State Bar No. 185835)
madams@rutan.com
Meredith Williams (State Bar No. 292888)
mwilliams@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Tel: (714) 641-5100
Fax: (714) 546-9035

Attorneys for Plaintiff
NATURAL THOUGHTS, INCORPORATED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**NATURAL THOUGHTS, INCORPORATED, a California Corporation,**

**Plaintiff,**

**vs.**

**PERFORMANCE TOUCH, LLC, a Delaware Limited Liability Company; THE HYGENIC CORPORATION, a Delaware Corporation; and DOES 1 through 10,**

**Defendant.**

**Case No.** **'17CV2148 BEN JMA**

**COMPLAINT FOR:**

1. **FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION [15 U.S.C. § 1125(a)]**
2. **FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**
3. **UNFAIR BUSINESS PRACTICES [CAL. BUS. & PROF. CODE § 17200, *et seq.*]**
4. **COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff Natural Thoughts, Incorporated ("Plaintiff") alleges as follows against defendants Performance Touch, LLC ("Performance Touch"), The Hygenic Corporation ("Hygenic"), and Does 1 through 10, inclusive (collectively, "Defendants"):

## NATURE OF THE CASE

1. Plaintiff seeks injunctive and monetary relief in this action for false designation of origin, trademark infringement, statutory unfair competition, and common law unfair competition and trademark infringement with regard to Plaintiff's trademark DUAL-PURPOSE (the "DUAL-PURPOSE Mark"). Plaintiff is a leading manufacturer of high quality professional massage products and produces and sells a full line of natural massage oils, cremes, lotions and gels, as well as body, face, and foot treatment products for the professional spa industry. Plaintiff has used the DUAL-PURPOSE Mark for over 30 years. As such, consumers have come to associate the DUAL-PURPOSE Mark with a single source -- Plaintiff's high quality massage products. In addition to Plaintiff's DUAL-PURPOSE Mark, Plaintiff is the owner of several federally registered trademarks for BIOTONE described in greater detail herein (the "BIOTONE Marks"), including Registration No. 2,159,105 registered on May 19, 1998 with a first use date of May 10, 1986.

2. Defendants advertise, produce and sell competing professional massage products under Performance Touch's Bon Vital brand, which Defendants market in a manner designed to trade off of the goodwill associated with Plaintiff's products. Most recently, on or about September 14, 2017, Defendants announced the launch of a product infringing the DUAL-PURPOSE Mark by using the mark in Defendants' advertising and product packaging. This product also mimics Plaintiff's products offered under the DUAL-PURPOSE Mark in that it is the latest set of products that Defendants have intentionally sized and priced to match the sizing and pricing of Plaintiff's products, which is likely to add to the consumer confusion already arising from Defendants' infringing use of the DUAL-PURPOSE Mark.

3. Defendants have further infringed Plaintiff's trademarks and engaged in unfair competition through their website www.bonvital.com/ ("Defendants' Website"), which has a search function that uses Plaintiff's BIOTONE Marks and DUAL-PURPOSE Mark to mislead consumers into believing that they are purchasing Plaintiff's products or products otherwise associated with or approved by Plaintiff.

4. Through Defendants' advertising and sale of products infringing Plaintiff's DUAL-PURPOSE Mark, and Defendants' infringing use of Plaintiff's DUAL-PURPOSE Mark and BIOTONE Marks on Defendants' Website, Defendants have violated, and continue to violate, the Trademark Act of 1946 as amended, 15 U.S.C. section 1051 *et seq.* (the "Lanham Act"), and California state law through their unauthorized use of a mark that is identical, or at minimum confusingly similar, to the DUAL-PURPOSE Mark and BIOTONE Marks that is likely to cause consumer confusion as to the source of Defendants' goods.

## PARTIES

5. Plaintiff is a California corporation with its principal place of business at 4757 Old Cliffs Road, San Diego, CA 92120.

6. On information and belief, Performance Touch is a Delaware limited liability company that is registered in Wisconsin and doing business in California. Defendant Performance Touch's principal place of business is 1245 Home Avenue, Akron, OH 44310.

7. On information and belief, Hygenic is a Delaware corporation that is registered in Ohio and doing business in California, and operates Defendants' Website. Further on information and belief, Hygenic is an indirect wholly-owned subsidiary of Performance Health Holdings Corp. and owns and/or operates Performance Touch. Hygenic's principal place of business is also 1245 Home Avenue, Akron, OH 44310.

8. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 10, inclusive, are unknown to Plaintiff,

which therefore sues said defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to include their proper names and capacities when they have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named defendants participated in and are in some manner responsible for the acts described in this Complaint and the damage resulting therefrom.

9. Plaintiff alleges on information and belief that each of the defendants named herein as Does 1 through 10, inclusive, performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged herein, and are liable to Plaintiff for the damages and relief sought herein.

10. Plaintiff alleges on information and belief that, in performing the acts and omissions alleged herein, and at all times relevant hereto, each of the defendants was the agent and employee of each of the other defendants and was at all times acting within the course and scope of such agency and employment with the knowledge and approval of each of the other defendants.

## JURISDICTION AND VENUE

11. This action arises under the Lanham Act, 15 U.S.C. section 1125 *et seq.*, section 1114 *et seq.*, and under statutory and common law unfair competition. This Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1331 and 1338, and 15 U.S.C. section 1121 because Plaintiff's claims arise, in part, under the Lanham Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C. sections 1338(b) and 1367 over Plaintiff's claims arising under the laws of the State of California.

12. This Court has personal jurisdiction over Defendants because they transact business in the State of California, including by directing their advertising to California consumers and distributors.

13. Venue is proper in the Southern District of California under 28 U.S.C. section 1391(b) and (c) because, on information and belief, a substantial part of the events, omissions and acts that are the subject matter of this action occurred within

the Southern District of California.

**PLAINTIFF'S BIOTONE MARKS AND DUAL-PURPOSE MARK**

14. Plaintiff owns a number of federal trademark registrations for the mark BIOTONE. Plaintiff's federal trademark registrations include registrations for BIOTONE in International Class 3 (collectively referred to herein as the "BIOTONE Marks"), including those listed below:

| Mark | Reg. No. | Reg. Date | Class |
|---|---|---|---|
| BIOTONE | 2,159,105 | May 19, 1998 | 3 |
| BIOTONE | 3,560,602 | January 13, 2009 | 3 |
| BIOTONE | 3,569,469 | February 3, 2009 | 3 |
| BIOTONE (stylized) | 2,857,992 | June 29, 2004 | 3 |

15. True and correct copies of the certificates of registration for these BIOTONE Marks are attached to this complaint as Exhibit 1.

16. Further, since at least as early as 1986, and before Defendants used any similar mark, Plaintiff has continuously, prominently and exclusively used both the BIOTONE Marks and the DUAL-PURPOSE Mark to denote the source of its massage creme. During this period, Plaintiff has committed significant amounts of time, effort and money to developing a widely respected reputation in the professional massage products industry through which the DUAL-PURPOSE Mark has acquired secondary meaning indicating Plaintiff as the source of its high-quality goods. Thus, long before the acts complained of in this Complaint, members of the general consumer population recognized the DUAL-PURPOSE Mark as an exclusive source identifier for goods provided by Plaintiff.

17. Plaintiff has extensively advertised and marketed its goods in California and throughout the United States through various advertising media, including print, online and social media. Plaintiff has widely promoted and marketed its goods in numerous and diverse advertising media to promote the strength and renown of its

BIOTONE Marks and DUAL-PURPOSE Mark. Plaintiff has achieved a high level of commercial success in selling goods under the BIOTONE Marks and DUAL-PURPOSE Mark and has built a valuable reputation and substantial goodwill.

18. Through Plaintiff's extensive efforts, the BIOTONE Marks and DUAL-PURPOSE Mark have been established as a unique source identifier indicating Plaintiff as the origin of its goods, and have acquired secondary meaning in the minds of the purchasing public such that consumers identify goods sold under the BIOTONE Marks and DUAL-PURPOSE Mark as originating from only one source -- Plaintiff.

19. The BIOTONE Marks, DUAL-PURPOSE Mark, and the goodwill of Plaintiff's business in connection thereto, are valid and subsisting and remain in full force and effect and have never been abandoned.

20. The BIOTONE Marks and DUAL-PURPOSE Mark are extremely valuable to Plaintiff. Plaintiff will suffer irreparable harm if Defendants or other third parties are permitted to sell related goods or services under the BIOTONE Marks, the DUAL-PURPOSE Mark or confusingly similar marks.

21. On information and belief, on or about October 2012, a private equity investment firm named Gridiron Capital ("Gridiron") acquired Defendant Performance Health and/or Defendant Hygenic.

22. On or about the end of October 2013, Defendant Performance Health and/or Defendant Hygenic (now owned by Gridiron) approached Plaintiff about purchasing Plaintiff and its BIOTONE brand.

23. On information and belief, Defendants and Gridiron were interested in acquiring Plaintiff and its BIOTONE brand in large part due to the valuable goodwill Plaintiff has amassed over a thirty year period through its commitment to high quality products, including Plaintiff's leading products sold under the BIOTONE Marks and under the DUAL-PURPOSE Mark.

24. On information and belief, around three months after Plaintiff rejected Defendants' offer to acquire Plaintiff and its BIOTONE brand, Defendant

Performance Touch acquired the Bon Vital brand on or about January 2014.

25. Further on information and belief, on or about May 31, 2016, another private equity investment firm named Madison Dearborn Partners ("MDP") acquired Defendant Performance Health by having its portfolio company Patterson Medical acquire Performance Health Holdings, Inc. On or about that time, MDP and/or Defendants made plans to launch Defendants' "Complete" line of products intentionally trading off of the success of Plaintiff's DUAL-PURPOSE Mark.

**DEFENDANTS' WEBSITE INFRINGING PLAINTIFF'S MARKS**

26. Defendants use www.bonvital.com/ ("Defendants' Website") to market and sell their professional massage and spa products online to consumers and businesses. Defendants' Website includes a search bar on which the phrase "Search entire store here…" appears. When a user clicks on this search bar and begins typing the letters "B" then "I," a list of terms appears including "Biotone Creme," "Biotone dual purpose," "Bitone [sic] dual purpose massage creme," "bitone [sic] dual purpose massage crème," "biotone dual purpose," and several other similar terms using Plaintiff's BIOTONE Marks and DUAL-PURPOSE Mark or close misspellings of these marks. Similarly, when a user clicks on the search bar and begins typing the letters "D" then "U," several terms appear, including "DUAL PURPOSE MASSAGE CREAM," "dual purpose," "dual purpose massage creme," "dual cream," "dual purpose creme," "Duel [sic] purpose creme," and "DUAL MASSAGE CREME."

27. Through its use of the auto-populated search function, Defendants' Website misleads consumers into believing that the products matching the auto-populated terms can be purchased through Defendants' Website. When a user clicks through any of these links on Defendants' Website that appear to be Biotone products, and specifically, Biotone "Dual Purpose" products, the link instead directs the user to a page listing Bon Vital products. The header of the landing page states "SEARCH RESULTS FOR" and names the product suggested by the auto-population feature. Thus, for example, a consumer who types "B" then "I" into the search function will

have "biotone dual purpose" suggested as a product. When the consumer clicks on "biotone dual purpose" the consumer is directed to a page that prominently displays "SEARCH RESULTS FOR BIOTONE DUAL PURPOSE".

28. Despite the landing page prominently displaying "SEARCH RESULTS FOR BIOTONE DUAL PURPOSE", the products offered for sale on Defendants' Website are Defendants' products, which are depicted by an image of the product packaging (e.g., the plastic bottle containing the massage creme) with the name of the product in tiny font that is a fraction of the size of the prominently displayed "SEARCH RESULTS FOR BIOTONE DUAL PURPOSE".

29. On information and belief, Defendants set up the auto-populated search function or caused it to be set up in this manner so that consumers seeking Plaintiff's products sold under the BIOTONE Marks and DUAL-PURPOSE Mark would be misled into purchasing Defendants' products under the mistaken belief that these were made by or otherwise affiliated with Plaintiff, or at the very least by causing initial interest confusion in the minds of consumers by misleading them into believing that Defendants' Website sells Plaintiff's products.

30. After Plaintiff's adoption and use of the BIOTONE Marks, Defendants began using the mark in connection with their competing massage products as described herein. Defendants use the BIOTONE Marks in conducting and promoting their business and products, including, without limitation, by displaying the BIOTONE Marks on their website as described herein.

31. Defendants' conduct as alleged herein is likely to cause consumer confusion, including, without limitation, confusion that is damaging Plaintiff's reputation and the goodwill associated with the BIOTONE Marks.

32. Defendants' advertising, sale and offering for sale of goods using Plaintiff's BIOTONE Marks as alleged herein, or a mark confusingly similar to Plaintiff's BIOTONE Marks, is not authorized or approved by Plaintiff.

33. On information and belief, Defendants' activities complained of herein

constitute willful and intentional infringement of the BIOTONE Marks.

**DEFENDANTS' FURTHER INFRINGEMENT OF THE DUAL-PURPOSE MARK**

34. On or about September 14, 2017, Defendants announced the launch of their "Complete" line of products that infringes Plaintiff's DUAL-PURPOSE Mark. On information and belief, Defendants' advertising of this new line of products and Defendants' product packaging use Plaintiff's DUAL-PURPOSE Mark to trade off of the valuable goodwill Plaintiff has amassed over three decades of providing superior products.

35. On information and belief, Defendants intentionally have selected and continue to select sizes and pricing for their competing products that are exactly matched or proportional to the sizes and pricing of Plaintiff's products, including Defendants' "dual purpose" products infringing Plaintiff's DUAL-PURPOSE Mark. Defendants' packaging and sale of their products in the precise volume and at the same price as Plaintiff's products compounds the confusion created by Defendants' infringing use of Plaintiff's DUAL-PURPOSE Mark on Defendants' products, and Defendants' misleading auto-populated search function described above that infringes the DUAL-PURPOSE Mark and the BIOTONE Marks.

36. After Plaintiff's adoption and use of the DUAL-PURPOSE Mark, Defendants began using the mark in connection with their competing products. Defendants use the DUAL-PURPOSE Mark in conducting and promoting their business and products, including, without limitation, by displaying the DUAL-PURPOSE Mark on their website and product packaging.

37. Defendants' conduct as alleged herein is likely to cause consumer confusion, including, without limitation, confusion that is damaging Plaintiff's reputation and the goodwill associated with the DUAL-PURPOSE Mark.

38. Defendants' advertising, sale and offering for sale of goods under Plaintiff's DUAL-PURPOSE Mark, or a mark confusingly similar to Plaintiff's

DUAL-PURPOSE Mark, is not authorized or approved by Plaintiff.

39. On information and belief, Defendants' activities complained of herein constitute willful and intentional infringement of the DUAL-PURPOSE Mark.

## FIRST CLAIM FOR RELIEF

### False Designation of Origin and Unfair Competition

### [15 U.S.C. § 1125(a)]

40. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 39 above, inclusive, as though fully set forth herein.

41. After Plaintiff began using the DUAL-PURPOSE Mark in commerce, Defendants began using the DUAL-PURPOSE Mark, or a mark confusingly similar to Plaintiff's DUAL-PURPOSE Mark, in connection with their professional massage products.

42. On information and belief, Defendants use the DUAL-PURPOSE Mark, or a mark confusingly similar to Plaintiff's DUAL-PURPOSE Mark, with the deliberate intent of capitalizing and trading on the goodwill and reputation of Plaintiff.

43. Defendants' use in commerce of the DUAL-PURPOSE Mark, or a mark confusingly similar to the DUAL-PURPOSE Mark, will tend to cause the relevant public and trade to believe erroneously that Defendants' goods are associated with Plaintiff.

44. Defendants' use in commerce of the DUAL-PURPOSE Mark, or a mark confusingly similar to the DUAL-PURPOSE Mark, in connection with their goods constitutes a false designation of the origin and/or sponsorship of such goods and falsely describes and represents such goods.

45. By its acts as alleged herein, Defendants have falsely designated and represented goods sold in commerce in violation of 15 U.S.C. section 1125(a), have otherwise used the goodwill of Plaintiff to sell Defendants' own goods, and have otherwise competed unfairly with Plaintiff.

46. On information and belief, Defendants are now committing the acts complained of above with full knowledge that their acts are unlawful.

47. Defendants have displayed a willful course of conduct toward appropriation and destruction of Plaintiff's rights in and to the DUAL-PURPOSE Mark.

48. Defendants' wrongful acts and conduct as alleged herein have permitted or will permit them to generate substantial sales and profits on the strength of Plaintiff's advertising, sales, consumer recognition, and goodwill in connection with the DUAL-PURPOSE Mark.

49. As a result of Defendants' wrongful acts alleged herein, Plaintiff has suffered and will continue to suffer monetary damage in an amount not thus far determined.

50. On information and belief, Defendants' acts of unfair competition by false designation of origin in violation of the Lanham Act have caused financial injury and damages to Plaintiff and have been willful, making this an exceptional case within the meaning of the Lanham Act, 15 U.S.C. section 1117, thereby entitling Plaintiff to damages, attorneys' fees, and costs.

51. Defendants' acts and conduct constitute unfair competition that has caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage, and injury to Plaintiff's goodwill and business reputation.

52. Plaintiff is entitled to damages as a result of Defendants' actions and conduct and, because such damages alone do not provide Plaintiff with an adequate remedy at law, Plaintiff is entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF

### Federal Trademark Infringement

### [15 U.S.C. § 1114]

53. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 52 above, inclusive, as though fully set

forth herein.

54. By the acts and omissions set forth above, Defendants have infringed and continue to infringe Plaintiff's rights regarding its federal trademark registrations, in violation of Section 32 of the Lanham Act, 15 U.S.C. section 1114. Specifically, Plaintiff alleges ownership of the BIOTONE Marks as identified above. Copies of the registrations for the BIOTONE Marks are attached hereto as Exhibit 1.

55. Defendants' conduct and use of the BIOTONE Marks or marks confusingly similar to the BIOTONE Marks is likely to cause confusion, mistake and deception among the general purchasing public as to the affiliation, connection, association, origin, sponsorship or approval of Defendants' goods, and interfere with Plaintiff's ability to use its marks to indicate a single quality control source of goods and services.

56. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to a permanent injunction against further infringing conduct by Defendants.

57. Defendants have profited and are profiting by such infringement and Plaintiff has been, and is being, damaged by such infringement. Plaintiff is therefore entitled to recover damages from Defendants in an amount to be proved at trial as a consequence of Defendants' infringing activities.

## THIRD CLAIM FOR RELIEF

### Unfair Business Practices

### [CAL. BUS. & PROF. CODE § 17200, *et seq.*]

58. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 57 above, inclusive, as though fully set forth herein.

59. Defendants' advertising, selling and offering for sale goods using the DUAL-PURPOSE Mark and the BIOTONE Marks, or mark confusingly similar to the DUAL-PURPOSE Mark or the BIOTONE Marks, as described above constitutes

unlawful, unfair, or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising in violation of section 17200 of the California Business and Professions Code.

60. The unlawful conduct alleged herein has caused Plaintiff, and unless enjoined will continue to cause Plaintiff, irreparable harm. Plaintiff has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief. Plaintiff is also entitled to restitution of Defendants' ill-gotten gains.

## FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition and Trademark Infringement

61. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 60 above, inclusive, as though fully set forth herein.

62. Defendants' actions and conduct as alleged herein constitute unfair competition under California common law.

63. Defendants' actions and conduct in adopting and using Plaintiff's DUAL-PURPOSE Mark and the BIOTONE Marks, or marks confusingly similar to the DUAL-PURPOSE Mark and the BIOTONE Marks, in California constitute trademark infringement under California common law.

64. Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage, and injury to Plaintiff, including but not limited to injury to Plaintiff's goodwill and business reputation.

65. Plaintiff has no adequate remedy at law, and is being irreparably damaged by Defendants' acts in violation of California common law, entitling Plaintiff to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an order and judgment against Defendants as follows:

1. That Defendants and their officers, directors, partners, agents, servants,

employees, attorneys, confederates, and all persons acting for, with, by, through or under them, and any others within their control or supervision, and all others in active concert or participation with the above, be enjoined during the pendency of this action and permanently thereafter from using the DUAL-PURPOSE Mark or any other name or mark confusingly similar to the DUAL-PURPOSE Mark, either alone or in combination with other words or symbols, in the marketing, sales, promotion, advertising, identification, or in any other manner in connection with massage products, including oils, cremes and lotions, in the United States;

2. That Defendants, and their officers, directors, partners, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them, and any others within their control or supervision, and all others in active concert or participation with the above, be enjoined during the pendency of this action and permanently thereafter from using the DUAL-PURPOSE Mark or any other name or mark confusingly similar to the DUAL-PURPOSE Mark, in any form or manner that would tend to identify or associate Defendants' business or goods with Plaintiff in the marketing, sales, promotion, advertising, identification, or in any other manner in connection with massage products, including oils, cremes and lotions, in the United States;

3. That Defendants, and their officers, directors, partners, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them, and any others within their control or supervision, and all others in active concert or participation with the above, be enjoined during the pendency of this action and permanently thereafter from using the BIOTONE Marks or any other name or mark confusingly similar to the BIOTONE Marks, in any form or manner that would tend to identify or associate Defendants' business or goods with Plaintiff in the marketing, sales, promotion, advertising, identification, or in any other manner in connection with massage products, including oils, cremes and lotions, in the United States;

4. That Defendants, and their officers, directors, partners, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them, and any others within their control or supervision, and all others in active concert or participation with the above, be enjoined during the pendency of this action and permanently thereafter from representing to anyone, either orally or in writing, that their business or goods are affiliated with Plaintiff in any way or are approved by Plaintiff;

5. For an order requiring Defendants to deliver to Plaintiff's attorney within thirty (30) days after the entry of any preliminary or permanent injunction, to be impounded or destroyed by Plaintiff, all literature, signs, labels, prints, packages, wrappers, containers, advertising materials and any other items in its possession or control that contain the DUAL-PURPOSE Mark, or any mark confusingly similar to the DUAL-PURPOSE Mark, either alone or in combination with other words and symbols;

6. For an order requiring Defendants to remove from their websites, including, without limitation, www.bonvital.com/, within thirty (30) days after the entry of any preliminary or permanent injunction, all instances of the BIOTONE Marks or any other mark confusingly similar to the BIOTONE Marks, including the suggestions that auto-populate any search function;

7. For an order requiring Defendants to remove from their websites, including, without limitation, www.bonvital.com/, within thirty (30) days after the entry of any preliminary or permanent injunction, all instances of the DUAL-PURPOSE Mark, or any other mark confusingly similar to the DUAL-PURPOSE Mark, including the suggestions that auto-populate any search function;

8. For an order requiring Defendants to instruct, within thirty (30) days after the entry of any preliminary or permanent injunction, any third-party website that advertises Defendants' goods, to cease using the DUAL-PURPOSE Mark, or a mark confusingly similar to the DUAL-PURPOSE Mark, in connection with

Defendants' goods;

9. For an order requiring Defendants to file with the Clerk of this Court and serve Plaintiff, within thirty (30) days after the entry of any preliminary or permanent injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with 1 through 8 above;

10. For an award of Plaintiff's damages according to proof at trial;

11. For an award of three times Plaintiff's damages or Defendants' profits in view of the intentional and willful nature of Defendants' acts, pursuant to 15 U.S.C. section 1117;

12. For an order requiring Defendants to account for and pay to Plaintiff all gains, profits and advantages derived by Defendants from the unlawful activities alleged herein, and/or as a result of unjust enrichment;

13. For an award of reasonable attorneys' fees under 15 U.S.C. section 1117;

14. For an award of pre and post-judgment interest at the highest rate allowed by law;

15. For an award of costs and disbursements incurred in this action; and

16. For such further relief as this Court shall deem just and proper.

Dated: October 18, 2017

RUTAN & TUCKER, LLP
MICHAEL ADAMS
MEREDITH WILLIAMS

By: */s/ Michael Adams*
Michael Adams
Attorneys for Plaintiff
NATURAL THOUGHTS, INCORPORATED

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this action.

Dated: October 18, 2017

RUTAN & TUCKER, LLP
MICHAEL ADAMS
MEREDITH WILLIAMS

By: */s/ Michael Adams*
Michael Adams
Attorneys for Plaintiff
NATURAL THOUGHTS, INCORPORATED