UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL THOUGHTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PERFORMANCE TOUCH, LLC, et al., <br><br> Defendants. | Case No.: 3:17-cv-02148-BEN-JMA <br><br> **ORDER DENYING MOTION TO DISMISS** |

Before the Court is the motion to dismiss Plaintiff's Complaint filed by Defendants Performance Touch, LLC ("Performance Touch") and The Hygenic Corporation ("Hygenic," together "Defendants").[1] (Docket No. 11.) The motion is fully briefed.[2] For the following reasons, Defendants' motion is **DENIED**.

---

[1] On January 10, 2018, the parties filed a joint motion to extend time for Defendants to respond to Plaintiff's Complaint. (Docket No. 10.) However, Defendants filed their response before the Court issued an order. In the interests of justice and judicial economy, the joint motion is **GRANTED**. Fed. R. Civ. P. 1.

[2] In conjunction with their motion to dismiss, Defendants filed a Request for Judicial Notice ("RJN"), which Plaintiff opposed. (Docket Nos. 11-3, 14.) On the same day Defendants' motion to dismiss and RJN reply briefs were due, Defendants filed an unopposed ex parte motion for leave to consolidate the briefs, and attached the consolidated brief. (Docket No. 15.) In the interests of justice and judicial economy, the

1

# BACKGROUND[3]

Plaintiff Natural Thoughts, Inc. manufactures professional massage products, and produces and sells a full line of natural massage oils, cremes, lotions and gels, as well as body, face, and foot treatment products. Plaintiff's products use the trademarks "BIOTONE" (the "BIOTONE Marks") and "DUAL-PURPOSE" (the "DUAL-PURPOSE Mark"), but only the BIOTONE Marks are federally registered. Plaintiff has used these marks for over thirty years.

Since 1986, Plaintiff has used both the BIOTONE Marks and the DUAL-PURPOSE Mark continuously, prominently, and exclusively to denote the source of its massage creme. Plaintiff has committed significant amounts of time, effort, and money to developing a widely respected reputation in the professional massage products industry. As a result, Plaintiff alleges the DUAL-PURPOSE Mark "has acquired secondary meaning indicating Plaintiff as the source of its high-quality goods." (Compl. ¶ 16.)

In October 2013, Performance Touch and/or Hygenic approached Plaintiff about purchasing Plaintiff and its BIOTONE brand. Plaintiff rejected Defendants' offer. Subsequently, in January 2014, Performance Touch acquired the Bon Vital brand, under which Defendants currently advertise, produce, and sell competing professional massage products. Hygenic operates www.bonvital.com/, which markets and sells Defendants' professional massage and spa products to consumers and businesses on the Internet.

When a computer user uses Defendants' website's search bar, a dropdown list of potentially responsive search terms appears simultaneously as the user types in letters. For example, when a user types in the letter "B" followed by "I," a dropdown list of

---

Court **GRANTS** Defendants' unopposed ex parte motion to consolidate the reply briefing. Fed. R. Civ. P. 1. However, the parties are reminded to comply with the Civil Local Rules of this District in all future filings.

[3] The following overview of the facts are drawn from the allegations of Plaintiff's Complaint (Docket No. 1, "Compl."). The Court is not making findings of fact.

terms appears, including "Biotone Creme," "Biotone dual purpose," "Bitone [sic] dual purpose massage creme," "bitone [sic] dual purpose massage creme," and "biotone dual purpose." (*Id.* ¶ 26.) Similarly, when a user types in the letter "D" followed by "U," several terms appear, including "DUAL PURPOSE MASSAGE CREME," "dual purpose," "dual purpose massage creme," "dual creme," "dual purpose creme," and "duel [sic] purpose creme." (*Id.*) Plaintiff alleges Defendants directly or indirectly set up this auto-populated search function to mislead consumers about either: 1) the origin of the products they sell, or 2) whether Plaintiff and Defendants are affiliated.

On September 17, 2017, Defendants launched their "Complete" line of products, which allegedly matches or is proportional to Plaintiff's products in terms of size and price, and uses Plaintiff's DUAL-PURPOSE Mark to trade off Plaintiff's goodwill.

On October 18, 2017, Plaintiff initiated this action against Defendants alleging trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. §§ 1114 and 1125, and under California law. Defendants move for dismissal of all Plaintiff's claims pursuant to Federal Rule of Procedure 12(b)(6).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if the complaint fails to state a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556.

"A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). All factual allegations are accepted as true and "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling

on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[4]

While the Court must draw all reasonable inferences in the non-movant's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff's Complaint asserts claims for: (1) unfair competition and false designation of origin and (2) trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and California law. Because the parties' briefings for the instant motion to dismiss address Plaintiff's claims collectively rather than individually, the Court similarly analyzes the claims together in determining Defendants' motion. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.") (internal citations omitted); *Hokto Kinoko Co. v. Concord Farms, Inc.,* 810 F. Supp. 2d 1013, 1031 (C.D. Cal. 2011) ("[T]he

---

[4] Defendants request the Court take judicial notice of several documents, including documents from the United States Patent and Trademark Office, as well as information publicly available on various websites and declarations from their counsel. (Docket Nos. 11-3, 15-2.) Although judicial notice of facts in connection with a motion to dismiss is appropriate in certain instances, the Court concludes judicial notice of the requested documents is not presently warranted. Specifically, Defendants seek to use these documents to disprove Plaintiff's factual allegations, which the Court is required to assume true at the motion to dismiss stage. Therefore, Defendants' requests for judicial notice are **DENIED**.

4

courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition.") (citing *New West Corp. v. NYM Co. of Cal., Inc.,* 595 F.2d 1194, 1201 (9th Cir. 1979)).[5]

"To state a claim for infringement of a registered trademark under 15 U.S.C. § 1114, a plaintiff must plausibly allege that (1) plaintiff owns a registered trademark; (2) plaintiff's use of that mark began before the defendant's use; (3) the defendant's use is without the plaintiff's consent; and (4) the defendant's use is likely to cause confusion, or to cause mistake, or to deceive." *Gorski v. The Gymboree Corp.*, No. 14-CV-01314-LHK, 2014 WL 3533324, at *5 (N.D. Cal. July 16, 2014) (citing 15 U.S.C. § 1114(a); *Century 21 Real Estate v. Sandlin,* 846 F.2d 1175, 1178 (9th Cir. 1998)). The elements for a false designation of origin claim under 15 U.S.C. § 1125(a) "are identical to the above four elements of registered trademark infringement under 15 U.S.C. § 1114, except that the plaintiff's trademark need not be registered." *Id.* (citing 15 U.S.C. § 1125(a)).

### A. The BIOTONE Marks

Defendants challenge whether the Complaint adequately alleges that Defendants commercially use the BIOTONE Marks or that a likelihood of confusion exists. The Court finds both sufficiently pleaded.

1) Commercial use

Relying on *Hamzik v. Zale Corp./Delaware*, No. 306-CV-1300, 2007 WL 1174863 (N.D.N.Y. Apr. 19, 2007) and *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, Defendants contend they do not infringe Plaintiff's BIOTONE Marks as a matter of law because "it is the [Defendants'] website visitors, *not Defendants*, who are using Plaintiff's trademarks in commerce." (Mot. at p. 4) (emphasis in original.)

"Infringement claims are subject to a commercial use requirement." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (quoting "use in commerce"

---

[5] For the sake of brevity, the Court refers to Plaintiff's claims collectively as "trademark infringement" claims throughout the remainder of this Order.

language in 15 U.S.C. § 1114). The Ninth Circuit has interpreted the commercial use requirement as "use in connection with the sale of goods." *Id.* at 676-77 ("The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers.") (citing *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368 (1924)).

Here, Plaintiff's Complaint alleges Defendants use their website "to market and sell their professional massage and spa products online to consumers and businesses." (Compl. ¶ 26.) As detailed in the factual background above, Plaintiff further alleges that, prior to a computer user's complete entry of certain words/terms in Defendants' website's search bar, Defendants cause the BIOTONE Marks to appear in an auto-populated dropdown list for the user to select and search on Defendants' website. When a user selects one of the auto-populated BIOTONE Marks options, such as "biotone dual purpose," "the link instead directs the user to a page listing Bon Vital products" and displaying the statement "SEARCH RESULTS FOR BIOTONE DUAL PURPOSE." (Compl. ¶ 27.) The Court finds these allegations sufficient to plead commercial use.

Defendants' reliance on *Hamzik* and *1-800 Contacts* is misplaced. First, neither case is binding on this Court. Second, both cases are distinguishable from the instant action. In *Hamzik*, the plaintiff's theory of infringement was based on a computer user completely typing the plaintiff's trademark ("dating rings") into the search function of the defendant's website, after which the website displayed: "you typed: dating rings" and then displayed hundreds of rings with varying descriptions. *Hamzik*, 2007 WL 1174863, at *2. The district court dismissed the plaintiff's trademark infringement claims based on these allegations after concluding that "[t]he fact that the website exhibited (displayed back) the search phrase *entered by the computer user* does not transform Defendant's actions into a 'use' within the Lanham Act." *Id.* (emphasis added).

The facts in *1-800 Contacts* are even more distinguishable than *Hamzik*. In that case, the defendant was an internet marketing company that used a proprietary software

6

3:17-cv-02148-BEN-JMA

to monitor a computer user's internet activity in order to provide the computer user with relevant advertising in the form of "pop-up ads." *1-800 Contacts*, 414 F.3d at 402. The plaintiff alleged the defendant infringed its trademark when it caused a competitor's ads to appear in separate pop-up windows when a computer user, *who had downloaded the software*, intentionally accessed the plaintiff's website. *Id.* at 405. In short, *1-800 Contacts* is inapposite to the Court's analysis.

Here, Plaintiff's claim is based Defendants' use of its BIOTONE Marks as a suggested search term that appears *prior to* a computer user's independent entry of that complete term as a search. The distinction is slight but important. Unlike in *Hamzik*, a reasonable inference may be drawn that the auto-populated search terms using Plaintiff's BIOTONE Marks on Defendants' website could mislead a consumer as to whether Plaintiff's products could be purchased on Defendants' website or whether Plaintiff and Defendants are affiliated. Therefore, Plaintiff has stated a plausible claim for trademark infringement of its BIOTONE Marks, and Defendants' motion on this ground is **DENIED**.

### 2) Likelihood of Confusion.

Defendants alternatively contend dismissal is appropriate because Plaintiff has not plausibly alleged that consumers are likely to be confused by Defendants' use of Plaintiff's BIOTONE Marks because "when a search is performed utilizing Plaintiff's trademarks, all results displayed . . . are clearly identified as products sourced from Defendants." (Mot. at p. 13.)

The likelihood of confusion element is generally a question of fact that is not appropriate for determination on a motion to dismiss. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264-65 (9th Cir. 2001) ("trial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual . . . . Additionally, the question of likelihood of confusion is routinely submitted for jury determination as a question of fact.") (quoting *Levi Strauss & Co. v. Blue Bell Inc.,* 778 F.2d 1352, 1355 n.5) (citations omitted in original; internal quotation marks omitted).

Defendants urge the Court to apply the Ninth Circuit's reasoning in *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930 (9th Cir. 2015) and find Plaintiff cannot state a claim for trademark infringement. In *Multi Time Mach.*, Amazon was accused of trademark infringement for displaying search results using the plaintiff's trademark ("MTM Special Ops") following a consumer's search for the trademarked terms on Amazon's website. *Id.* at 933-34. The trial court granted Amazon's motion for summary judgment, specifically finding no likelihood of confusion. *Id.* at 935. On appeal, the Ninth Circuit affirmed the trial court's determination that no likelihood of confusion existed, explaining:

> Because Amazon clearly labels each of the products for sale by brand name and model number accompanied by a photograph of the item, it is unreasonable to suppose that the reasonably prudent consumer accustomed to shopping online would be confused about the source of the goods.

*Id.* at 938.

Defendants' argument is inappropriate at this time because it relies entirely on extrinsic evidence, which the Court may not consider in deciding a Rule 12(b)(6) motion to dismiss. Plaintiff's Complaint alleges Defendants' use of Plaintiff's BIOTONE Marks in the search function of its website misleads consumers as to whether Plaintiff's products may be purchased on Defendants' website or whether Plaintiff and Defendants are affiliated with one another. The Complaint further alleges Defendants set up their website to cause this confusion. On a complete factual record a trier of fact may ultimately conclude there is no likelihood of confusion, or perhaps such a determination could be made based on undisputed facts at the summary judgment stage. But at present, the Complaint pleads facts sufficient to make out a plausible claim of a likelihood of confusion. As a result, the motion to dismiss is **DENIED** on this ground.

### B. The DUAL-PURPOSE Mark

Defendants next argue that dismissal is warranted as to the DUAL-PURPOSE Mark infringement claims because Plaintiff has not plausibly alleged the mark has

8

3:17-cv-02148-BEN-JMA

attained secondary meaning. Alternatively, Defendants argue that even if Plaintiff has sufficiently alleged secondary meaning, they are nevertheless entitled to raise the classic fair use defense as a matter of law. The Court finds both arguments premature.

### 1) Secondary Meaning

"[O]n a motion to dismiss, a plaintiff does not have to specifically allege its common law trademark has attained secondary meaning, because it can be inferred from evidence relating to proof of intentional copying or public exposure achieved by the designation." *BottleHood, Inc. v. Bottle Mill*, No. 11-CV-2910-MMA-MDD, 2012 WL 1416272, at *5 (S.D. Cal. Apr. 23, 2012) (citations omitted).

Like their arguments for dismissal of the BIOTONE Marks, Defendants' improperly attempt to prove with extrinsic evidence that Plaintiff cannot demonstrate the DUAL-PURPOSE Mark has attained secondary meaning. But the standard for a motion to dismiss is not whether Plaintiff can ultimately prove the DUAL-PURPOSE Mark has attained secondary meaning, but rather whether the factual allegations of its pleading plausibly allege secondary meaning. *See BottleHood, Inc.*, 2012 WL 1416272, at *5 ("Although these allegations provide the Court with minimal detail regarding secondary meaning, Plaintiff does not have to plead secondary meaning to survive a motion to dismiss. . . . Therefore, the Court will not consider whether Plaintiff can ultimately prove secondary meaning at this time.") (citation omitted).

Plaintiff's Complaint specifically alleges that "since at least as early as 1986" it has "continuously, prominently and exclusively used both the BIOTONE Marks and the DUAL-PURPOSE Mark to denote the source of its massage creme." (Compl. ¶ 16.) Plaintiff further alleges that it has "committed significant amounts of time, effort and money to developing a widely respected reputation in the professional massage products industry through which the DUAL-PURPOSE Mark has acquired secondary meaning indicating Plaintiff as the source." (*Id.*) The Court finds these allegations sufficient to withstand Defendants' motion to dismiss. Accordingly, Defendants' motion on this ground is **DENIED**.

### 2) <u>Classic Fair Use Defense</u>

Finally, Defendants assert they are entitled to raise the classic fair use defense against Plaintiff's claims of trademark infringement of the DUAL-PURPOSE MARK. Plaintiff's opposition does not directly address Defendants' argument as it argues against the Court's application of the nominative fair use defense. (Opp'n at p. 21.)

The Ninth Circuit "distinguish[es] two types of fair use: 'classic fair use,' in which 'the defendant has used the plaintiff's mark to describe the defendant's *own* product,' and 'nominative fair use,' in which the defendant has used the plaintiff's mark 'to describe the *plaintiff's* product[.]'" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150-51 (9th Cir. 2002) (emphasis added in original) (citing *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 308 (9th Cir. 1992)).

Here, Defendants contend they are entitled to raise the fair use defense because they merely use the words "dual purpose" to accurately describe their own products. Thus, Defendants raise a classic fair use defense. Under the common law classic fair use defense, "[a] junior user is always entitled to use a descriptive term *in good faith* in its primary, descriptive sense other than as a trademark." *Id.* at 1150-51 (quoting 2 *McCarthy on Trademark and Unfair Competition* § 11:45 (4th ed. 2001) (internal quotation marks omitted; emphasis added). "To establish a classic fair use defense, a defendant must prove the following three elements: '1. Defendant's use of the term is not as a trademark or service mark; 2. Defendant uses the term 'fairly and in good faith'; and 3. [Defendant uses the term] '[o]nly to describe' its goods or services.'" *Id.* at 1151 (citing 2 *McCarthy on Trademark and Unfair Competition* § 11:49).

"The Ninth Circuit has held that fair use 'may be considered on a motion to dismiss, which requires the court to consider all allegations to be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment, when no material facts are in dispute.'" *Pinpoint Publ'ns, LLC v. Susco Media, Inc.*, No. 15-CV-301-AJB-NLS, 2015 WL 12670509, at *5 (S.D. Cal. May 29, 2015) (quoting *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008)).

The Court finds Defendants have not established the classic fair use defense applies as a matter of law. Even assuming Defendants do not use Plaintiff's DUAL-PURPOSE Mark as a trademark and only uses the mark to describe its own goods, Plaintiff alleges Defendants' use was in bad faith. Specifically, the Complaint alleges that in October 2013, Defendants approached Plaintiff about purchasing Plaintiff and its BIOTONE brand, in part because of the goodwill and reputation associated with the BIOTONE Marks and the DUAL-PURPOSE Mark. After Plaintiff rejected Defendants' offer, Performance Touch acquired the Bon Vital brand, under which Defendants currently advertise, produce, and sell competing professional massage products. On September 17, 2017, Defendants launched their "Complete" line of products, which allegedly matches or is proportional to Plaintiff's products in terms of size and price, and uses Plaintiff's DUAL-PURPOSE Mark to trade off Plaintiff's goodwill.

The Court finds these allegations plausible and, if proven true, would preclude Defendants' ability to raise the classic fair use defense. As previously discussed, after discovery Defendants may be able to demonstrate that they are entitled to raise the classic fair use defense, but the Court cannot decide this factual determination at this stage. Therefore, Defendants' motion to dismiss on this ground is also **DENIED**.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 27, 2018

Hon. Roger T. Benitez
United States District Judge